# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| MARCO DANE ACOFF, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 1:19-cv-0312-MHH-JEO |
| BRIAN HOWELL, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Marco Acoff, a pretrial detainee housed in the Calhoun County Jail, filed this action pursuant to 42 U.S.C. § 1983. Mr. Acoff alleges due process violations, false imprisonment, illegal arrest, conspiracy, cruel and unusual punishment, excessive force, and unconstitutional living conditions. (Doc. 1, p. 3). Mr. Acoff seeks compensatory and punitive damages and injunctive relief. (Doc. 1, p. 5). Mr. Acoff filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 2).

Consistent with the Prison Litigation Reform Act's screening provision, Chief Magistrate Judge Ott asked Mr. Acoff to show cause why the Court should not dismiss this case pursuant to 28 U.S.C. § 1915(g) under the "three strikes rule" and deny the application to proceed *in forma pauperis*. (Doc. 3). The PLRA's three strikes rule states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The Eleventh Circuit Court of Appeals has held that a prisoner with a history of three or more meritless cases must pay the full filing fee when filing a new lawsuit. *Dupree v. Palmer,* 284 F.3d 1234, 1236 (11th Cir. 2002); *Vanderberg v. Donaldson*, 259 F.3d 1321, 1324 (11th Cir. 2001). Mr. Acoff acknowledges that he has three strikes but contends that the PLRA's imminent danger exception enables him to proceed without first paying the full filing fee. (Doc. 4).

The Eleventh Circuit Court of Appeals discussed the "imminent danger" exception to the PLRA's three strikes rule at length in *Brown v. Johnson*, 387 F.3d 1344 (11th Cir. 2004). The Court of Appeals stated:

> Section 1915(g), the three strikes provision, bars a prisoner, who has filed three or more complaints that have been dismissed as frivolous or malicious or for failure to state a claim, from filing a complaint *in forma pauperis,* unless the prisoner is "under imminent danger of serious physical injury." Brown does not dispute that he has three strikes under section 1915(g). Brown, therefore, may not bring his action *in forma pauperis* unless he is under imminent danger of serious physical injury.
>
> Although the Second, Third, Fifth, Seventh, Eighth, and Eleventh Circuits have determined that a prisoner must allege a present imminent danger, as opposed to a past danger, to proceed under section 1915(g), *Malik v. McGinnis,* 293 F.3d 559 (2d Cir.2002); *Abdul–Akbar*

*v. McKelvie,* 239 F.3d 307 (3d Cir.2001) (*en banc* ); *Baños v. O'Guin,* 144 F.3d 883 (5th Cir.1998); *Ciarpaglini v. Saini,* 352 F.3d 328 (7th Cir.2003); *Ashley v. Dilworth,* 147 F.3d 715 (8th Cir.1998); and *Medberry v. Butler,* 185 F.3d 1189 (11th Cir.1999), only the Third, Seventh, and Eighth Circuits have applied the "serious physical injury" portion of the exception. *See Gibbs v. Cross,* 160 F.3d 962 (3d Cir.1998); *Ciarpaglini,* 352 F.3d 328; *Martin v. Shelton,* 319 F.3d 1048 (8th Cir.2003); *McAlphin v. Toney,* 281 F.3d 709 (8th Cir.2002); *Ashley,* 147 F.3d 715. In *Gibbs,* the Third Circuit held that the prisoner's allegations that "unidentified dust particles were in his lungs and mucus, and that he [was] suffering from severe headaches, watery eyes, and a change in his voice as a result" of being placed in a dusty cell were sufficient to meet the imminent danger exception. 160 F.3d at 965. In response to arguments that the allegations of danger were speculative, the court stated that "[i]nmates ought to be able to complain about 'unsafe, life-threatening condition[s] in their prison' without waiting for something to happen to them." *Id.* Likewise, the Seventh Circuit, in *Ciarpaglini,* held that allegations of "continuing harm as a direct result of being denied ... medication" for bipolar disorder, attention deficit hyperactivity disorder, and panic disorder, were sufficient to meet the imminent danger exception. 352 F.3d at 330. In *Ciarpaglini,* the prisoner alleged that, as a result of the denial of his medication, his symptoms returned, and that panic attacks caused him to suffer "heart palpitations, chest pains, labored breathing, choking sensations, and paralysis in his legs and back." *Id.*

The Eighth Circuit addressed the question of serious physical injury on three separate occasions. In *Ashley,* the prisoner alleged that prison officials repeatedly placed him in proximity to inmates on his enemy alert list and that he was twice attacked, once with a sharpened, nine-inch screwdriver and once with a butcher knife, and the court ruled that he had alleged imminent danger of serious physical harm. 147 F.3d at 717. In *McAlphin,* the prisoner alleged that he was denied dental extractions, that his gums became so infected he eventually needed five extractions, and two of the extractions had not been scheduled for six months during which time the decay spread. 281 F.3d at 710. When he filed the complaint, the two remaining extractions had not been made. *Id.* The court liberally construed the complaint as alleging that the prisoner was "in imminent danger of serious physical injury because of spreading infection in his mouth," which satisfied section 1915(g). *Id.*

In contrast, in *Martin,* the court found that a prisoner's claim of imminent danger of serious physical injury failed. The prisoner alleged that he was forced to work outside in inclement weather on two occasions, once in cold weather without warm clothing and several months later in hot weather despite his blood pressure condition. 319 F.3d at 1050. The complaint also included "conclusory assertions that defendants were trying to kill Martin by forcing him to work in extreme conditions despite his blood pressure condition." *Id.* The Eighth Circuit held that "[t]his type of general assertion is insufficient to invoke the exception to § 1915(g) absent specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Id.*

With this persuasive authority in mind, we turn to Brown's complaint, which we must construe liberally and the allegations of which we must accept as true. *See Jackson v. Reese,* 608 F.2d 159, 160 (5th Cir.1979); *Hughes,* 350 F.3d at 1159–60. In his complaint, Brown alleges that he has HIV and hepatitis. He alleges that on September 5, 2002, because his condition was deteriorating, he was prescribed medications for HIV and hepatitis by Dr. Walton. Brown alleges that, on October 30, 2002, Dr. Presnell stopped the prescribed treatment and, as a result, Brown suffered prolonged skin and newly developed scalp infections, severe pain in the eyes and vision problems, fatigue and prolonged stomach pains. In his amended complaint, Brown alleges that if not treated he would be exposed to "opportunistic infections, such as pneumonia, esophageal candidiasis, salmonella, and wasting syndrome," which would cause him to die sooner. Brown also states that he followed the proper grievance procedure, and in response to his grievance, was informed that "the physician [had seen him] recently, [he would] be seen in the next chronic clinic, [and the warden did] not feel that further action [was] warranted." Liberally construed, Brown alleges a total withdrawal of treatment for serious diseases, as a result of which he suffers from severe ongoing complications, is more susceptible to various illnesses, and his condition will rapidly deteriorate.

The defendants offer two rebuttals. The defendants argue that these allegations fail to allege imminent danger of serious physical injury because skin problems do not constitute serious injury and Brown's allegations of eye problems are too vague. The defendants also

> argue that, "although [Brown's] illness may ultimately lead to serious physical problems and even death, Brown's allegations do not show that his treatment puts him in imminent danger." These arguments fail.
>
> Although some of the specific physical conditions about which Brown complains may not constitute serious injury, the issue is whether his complaint, as a whole, alleges imminent danger of serious physical injury. Viewed together, the afflictions of which Brown currently complains, including his HIV and hepatitis, and the alleged danger of more serious afflictions if he is not treated constitute imminent danger of serious physical injury. That Brown's illnesses are already serious does not preclude him from arguing that his condition is worsening more rapidly as a result of the complete withdrawal of treatment. The amended complaint alleges imminent danger of serious physical injury.

*Brown*, 387 F.3d at 1349-50.

The examples that the Eleventh Circuit Court of Appeals discussed in the *Brown* case illustrate that an "imminent danger of serious physical injury" must relate to specific, serious threats to the complaining prisoner's health evidenced by physical symptoms or existing threats of imminent physical violence. In his response to the magistrate judge's show cause order, Mr. Acoff contends that the imminent danger exception applies because he is fighting physically with cellmates for space; because he is sleeping on the floor due to overcrowding and, consequently, is exposed to rats and poisonous spiders; and because he is inhaling air from vents in which black mold is located, causing him to "constantly cough[] and spit[] Blackish, Yellow, and Greenish mucus" and suffer upper respiratory problems. (Doc. 4, pp. 1-2); (*see also* Doc. 1, pp. 7, 15, 18) (describing cell overcrowding and black mold health issues that prison officials have ignored).

5

In his first motion to amend the complaint, Mr. Acoff describes various grievances that he filed with prison officials between February 2019 and March 2019 concerning black mold and brown recluse spiders. (Doc. 5). In one grievance, Mr. Acoff asserts that he "caught a brown recluse spider in [his] bed," and he asks prison officials to spray for spiders. (Doc. 5, p. 3). In another motion to amend his complaint, Mr. Acoff alleges that another inmate attacked and stabbed him (Mr. Acoff) in the neck and arm in April 2019. (Doc. 11). Mr. Acoff maintains that he "made several attempts to notify officers of [the] incident before it happened." (Doc. 11, p. 1). Mr. Acoff asserts that without another inmate's help in "beating on the windows to get [the officers'] attention[,]" he (Mr. Acoff) would have died. (Doc. 11, p. 1). Mr. Acoff contends that "his life is in imminent danger due to the lack of officers and safety and security violation(s), etc." (Doc. 11, pp. 1-2).

Mr. Acoff filed a motion for summary judgment to which he attached the following assertions of fact concerning the conditions in which he is living:

> 1.#) There are no intercoms in the dorm(s) to help notify officers of incidents/Fights or health issues which make[] us have to beat down doors and windows to get officers['] attention, which sometimes takes hours. 2.#) There is [b]lack mold in [the] showers and vents, that regulate air [f]low in [the] [j]ail; [about] which we've complained; verbally and thr[ough] [g]rievances; and no one/staff has attempted to come investigate the problems. 3.#) There [are spiders] ([b]rown [r]ecluse[s]) . . . and [r]ats everywhere and they have not investigated or tried to com[e] [and] [see] [the] problems. 4.#) Jail is overcrowded and we are 3 to 4 people to a cell, which keeps tension among inmates [b]ecause of [lack of] space. 5.#) We are sleeping on the [f]loor like animals. 6.#) When inspectors come, they make everybody put mat[]s

> in [the] cells or take away the [p]hones and TVs if we refuse. . . . We as the inmates have complained either verbally or [t]hr[ough] the [g]rievance proced[ures] to no avail[.] Please help.

(Doc. 6, p. 3). Mr. Acoff and other prisoners certified the truthfulness of these allegations under penalty of perjury. (Doc. 6, p. 6; Doc. 6, p. 7, ¶ 27).

Consistent with *Brown*, the Court has considered Mr. Acoff's allegations as a whole. *Brown*, 387 F.3d at 1350. Although some of the conditions about which Mr. Acoff complains may not rise to the level of a serious, imminent threat to his health, Mr. Acoff's allegations about untreated brown recluse spiders in his cell and black mold in vents that is causing him to constantly cough up mucus and suffer respiratory problems satisfies the imminent danger exception to the three strikes rule.

According to a medical website, multiple risks are associated with a brown recluse spider bite:

> The brown recluse venom is extremely poisonous, even more potent than that of a rattlesnake. Yet recluse venom causes less disease than a rattlesnake bite because of the small quantities injected into its victims. The venom of the brown recluse is toxic to cells and tissues.
>
> > This venom is a collection of enzymes. One of the specific enzymes, once released into the victim's skin, causes destruction of local cell membranes, which disrupts the integrity of tissues leading to local breakdown of skin, fat, and blood vessels. This process leads to eventual tissue death (necrosis) in areas immediately surrounding the bite site.
> >
> > The venom also induces in its victim an immune response. The victim's immune system releases inflammatory agents-histamines, cytokines, and interleukins-that recruit

signal specific disease-fighting white blood cells to the area of injury. In severe cases, however, these same inflammatory agents can themselves cause injury. These secondary effects of the venom, although extremely rare, can produce these more significant side effects of the spider bite:

- Destruction of red blood cells

- Low platelet count

- Blood clots in the capillaries and loss of ability to form clots where needed

- Acute renal failure (kidney damage)

- Coma

- Death

https://www.emedicinehealth.com/spider_bite_brown_recluse_spider_bite/article_em.htm#brown_recluse_bite_causes (last visited Jan. 7, 2019). The seriousness of a brown recluse spider bite will depend on many variables, but Mr. Acoff does not have to endure a brown recluse spider bite and suffer medical consequences to meet the imminent danger exception. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) (explaining that "a prison inmate . . . could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery"); *see also Gibbs*, 160 F.3d at 965 ("Inmates ought to be able to complain about 'unsafe, life-threatening condition[s] in their prison' without waiting for something to happen to them.").

Mr. Acoff's allegations about the potentially dangerous mold in the showers and the vents at the Calhoun County Jail closely resemble the allegations in *Gibbs* (cited with approval in *Brown*). In *Gibbs*, the plaintiff complained of being "forced to breathe particles of dust and lint which were continuously being dispersed into his cell through the ventilation system." *Gibbs*, 160 F.3d at 965. The plaintiff alleged symptoms of "'severe headaches, change in voice, mucus that is full of dust and lint, and watery eyes.'" *Gibbs*, 160 F.3d at 965. The plaintiff asserted that "a significant possibility" existed that he was "under imminent danger of serious physical injury" "depending on the nature of the particles he [was] breathing[.]" *Gibbs*, 160 F.3d at 965. The plaintiff alleged that prison staff had not "responded to his request to address [the] situation[.]" *Gibbs*, 160 F.3d at 964. The defendants maintained that the plaintiff had alleged a speculative injury. *Gibbs*, 160 F.3d at 965. The Third Circuit Court of Appeals rejected the defendants' position and explained that the imminent danger exception does not require "allegations of an existing serious physical injury . . . [;] [i]t is sufficient that the condition poses an imminent danger of serious physical injury." *Gibbs*, 160 F.3d at 967.

To proceed, Mr. Acoff must allege not only prison conditions that pose a serious threat to his health but also facts showing that the defendants were deliberately indifferent to those conditions.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the

> official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In his initial complaint, Mr. Acoff alleges that he complained to Captain Starr about the black mold in showers and exhaust vents, and Captain Starr "never responded" or had the mold removed. (Doc. 1, p. 18). In his motion to amend his complaint, Mr. Acoff asserts that he complained to maintenance twice about mold, once with no response and once with a response from "J. Roebuck" that stated "will address," (Doc. 5, p. 2); he filed a grievance about brown recluse spiders and mold" to which J. Luker replied "I will check into getting some spray," (Doc. 5, p. 2); he filed a grievance about the brown recluse spider that he caught in his bed to which "I. Chames" replied "we will alert pest control," (Doc. 5, p. 3); and he filed another black mold grievance to which he received no response, (Doc. 5, p. 3).

Captain Starr and I. Chames are named defendants. (Doc. 1, p. 1). Accepting Mr. Acoff's allegations as true at this stage of the action, Mr. Acoff has alleged facts that indicate that Captain Starr and I. Chames were aware of the conditions of confinement, and Mr. Acoff has alleged facts that indicate that he filed numerous requests for help because the defendants did not take steps to address the brown recluse spiders or the black mold in vents and in showers.

Therefore, Mr. Acoff's prison condition allegations concerning black mold and brown recluse spiders meet the PLRA's imminent danger exception to the three strikes rule, and the Court grants Mr. Acoff's *in forma pauperis* motion to pursue those claims. (Doc. 2). The Court grants Mr. Acoff's motion to amend his complaint with respect to the allegations relating to conditions of confinement (Doc. 5, pp. 1-3) but denies without prejudice the remainder of that motion. The Court denies without prejudice Mr. Acoff's remaining motions to amend and his conspiracy motion. (Docs. 10, 11, 16, 17). The Court denies Mr. Acoff's motions for summary judgment without prejudice. (Docs. 6, 8, 9, 15). The Court strikes from Mr. Acoff's complaint allegations that do not relate to the mold and brown recluse spider conditions at the Calhoun County Jail.

If Mr. Acoff wants to add defendants, allegations, or claims to his lawsuit unrelated to the black mold and brown recluse spider issues, then he may file an amended complaint accompanied by payment of the full filing fee.

The Court does not have the power to change the venue of Mr. Acoff's criminal cases and denies Doc. 14 as moot.

The Court refers this matter to the magistrate judge for further proceedings.

**DONE** and **ORDERED** this 9th day of January, 2019.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE